Jason Gosselin (Attorney ID #026731995)
John Bloor (Attorney ID #026832009)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Tel: (215) 988-2700
Fax: (215) 988-2757
*Attorneys for Defendant Lincoln Benefit Life Company*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON DIVISION**

| | |
|---|---|
| NAFTALI KUNSTLINGER as Trustee of THE PINCHAS STOLPER INS TRUST 3/06/08,<br><br>*Plaintiff,*<br><br>v.<br><br>LINCOLN BENEFIT LIFE COMPANY,<br><br>*Defendant.* | Civil Action No. 3:22-cv-04534-GC-DEA |

**DEFENDANT LINCOLN BENEFIT LIFE COMPANY'S
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM
<u>IN RESPONSE TO PLAINTIFF'S COMPLAINT</u>**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Lincoln Benefit Life Company ("Lincoln Benefit"), by and through undersigned counsel, hereby answers the Complaint filed by Plaintiff Naftali Kunstlinger, as Trustee of the Pinchas Stopler Ins Trust 3/06/08's ("Plaintiff") in this action, asserts its Affirmative Defenses, and asserts Counterclaims, as follows:

## LINCOLN BENEFIT'S ANSWER

## ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

1. Naftali Kunstlinger is the trustee of The Pinchas Stolper Ins Trust 3/06/08 (the "Trust").

**ANSWER:     Admitted, upon information and belief.**

2. Naftali Kunstlinger, at all relevant times, is and has been a resident of the State of New Jersey.

**ANSWER:     Lincoln Benefit lacks knowledge or information sufficient to form a belief as to the truth of the allegation, and it is therefore denied.**

3. Upon information and belief, Lincoln is a foreign life insurance company.

**ANSWER:     Admitted that Lincoln Benefit is a life insurance company organized and existing under the laws of the Nebraska, with its principal place of business in Lincoln, Nebraska.**

4. At all relevant times, Lincoln was authorized and in fact did issue life insurance policies for the life of residents of the State of New Jersey.

**ANSWER:     Admitted.**

5. Lincoln issued a life insurance policy, policy number 01N1391386 with a policy date of July 15, 2008 (the "Policy") on the life of Phineas Stolper ("Phineas" or the "Insured").

**ANSWER:     Admitted.**

6. The face value of the Policy was $7,500,000.00.

**ANSWER:     Admitted.**

7. The Trust is and has always been the owner of the Policy.

**ANSWER:** **Admitted.**

8. The Trust is the beneficiary of the Policy.

**ANSWER:** **Admitted.**

9. On or about December 15, 2020, Defendant mailed a notice of the minimum amount due (the "Grace Notice") to Plaintiff. The Grace Notice advised that payment of $116,841.94 was due on or before February 14, 2021 or the policy will terminate.

**ANSWER:** **Admitted.**

10. The amount allegedly owed according to the Grace Notice was far greater than the $19,996.50 monthly premium payment Plaintiff was paying for many years prior to receiving the Grace Notice.

**ANSWER:** **Denied as stated. Admitted that the Trust had been making monthly premium payments in the amount of $19,996.50 throughout 2020. Denied that these monthly premium payments were sufficient to keep the Policy in force. Rather, the modal annual premium for the Policy at that time was $364,971.00 (or equal to twelve (12) monthly payments of $30,414.25). As Lincoln Benefit explained in its December 15, 2020 letter to the Trust, "If you have been submitting your planned periodic premium when billed, the amount and/or frequency is not sufficient to keep your coverage in force. Contact Client Services to assist in adjusting this amount."**

11. As a result, on or about February 9, 2021, five days prior to the due date, Plaintiff called Defendant to inquire as to why the Grace Notice was sent and was specifically advised by Defendant that to prevent the policy from terminating he may continue to pay the same amount he had been paying all along- $19,996.50 monthly premium payment.

**ANSWER: Admitted in part, denied in part. Admitted that a person identifying himself as Neftali Kunstlinger, on behalf of the Trust, called Lincoln Benefit on February 8, 2021. Denied that Lincoln Benefit informed Mr. Kunstlinger that continuing to make monthly payments of $19,996.50 would prevent the Policy from terminating. To the contrary, Lincoln Benefit informed Mr. Kunstlinger that the Trust would need to heed the grace notices to keep the Policy in force. Lincoln Benefit also agreed to provide Mr. Kunstlinger an illustration that would show the minimum premium required to keep the Policy in force through the insured's 95th birthday. Lincoln Benefit prepared that illustration and forwarded it to Mr. Kunstlinger on February 9, 2021. The illustration showed a required annual premium outlay of $206,000 for the remainder of the current policy year and required premium outlays of $721,269 (or equal to twelve (12) monthly payments of $60,105.75) through insured's age 95.**

12. Upon Defendant's instructions, Plaintiff continued to make the $19,996.50 monthly premium payments to Defendant by remitting checks dated February 9, 2021, March 8, 2021, April 8, 2021, and May 10, 2021, all of which Defendant deposited and has retained to date.

**ANSWER: Admitted in part, denied in part. Denied that Lincoln Benefit instructed the Trust to continue making $19,996.50 monthly premium payments. To the contrary and as discussed in greater detail in response to Paragraphs 10 and 11, Lincoln Benefit informed the Trust multiple times (e.g., in the December 15, 2020 grace letter, during Mr. Kunstlinger's February 8, 2021 telephone call, and in the February 9, 2021, illustration forwarded to Mr. Kunstlinger) that such payments were insufficient to keep the Policy in force going forward and that the Trust would need to heed the grace notices. Additionally,**

**Lincoln Benefit sent the Trust two more grace notices on February 16, 2021, and March 15, 2021, both of which informed the Trust that its planned period payments were insufficient to keep the Policy in force and that a "Minimum Payment" in excess of $150,000 was required to avoid termination.  Moreover, in the notice of lapse sent by Lincoln Benefit to the Trust on May 17, 2021, Lincoln Benefit encouraged the Trust to apply for reinstatement of the Policy, but the Trust did not do so prior to the insured's death.  Admitted that the Trust continued making the $19,996.50 monthly premium payments that Lincoln Benefit had informed it multiple times were insufficient to keep the Policy in force.  All other allegations in this paragraph are denied.**

13. Although Plaintiff continued to make all necessary and required premium payments as instructed by Defendant, in a notice dated May 17, 2021, Defendant declared that the Policy "lapsed with no value and all benefits are forfeited and void."

**ANSWER:    Admitted in part, denied in part.  Denied that the Trust made "all necessary and required premium payments" to keep the Policy in force.  Admitted that on May 17, 2021, Lincoln Benefit informed the Trust that the Policy's "grace period has expired and your policy has lapsed with no value and all benefit are forfeited and void."  This lapse was consistent with the March 15, 2021, grace notice sent to the Trust, in which Lincoln Benefit informed the Trust that a "Minimum Payment" of $150,657.27 needed to be received on or before May 15, 2021, or else the Policy would lapse and terminate.**

14. The insured tragically passed away on May 25, 2022.

**ANSWER:    Admitted, upon information and belief.**

15. Subsequently, a death claim was filed with Defendant to collect the death benefit owed under the Policy.

**ANSWER:** **Denied as stated. Because the Policy lapsed for non-payment of premiums on or about May 15, 2021, no death benefit was owed and no valid claim for the death benefit could be submitted.**

16. To date, Defendant has failed and refused to pay the death benefit.

**ANSWER:** **Denied as stated. Because the Policy lapsed for non-payment of premiums on or about May 15, 2021, no death benefit was owed and no valid claim for the death benefit could be submitted.**

## FIRST CAUSE OF ACTION

17. Plaintiff repeats and realleges each of the allegations contained in paragraph 1 through 16, above, as if fully set forth herein.

**ANSWER:** **Lincoln Benefit incorporates its responses to Paragraphs 1 through 16 as if fully set forth herein.**

18. Upon information and belief, Defendant did not account for the premium payments in accordance with the Policy terms.

**ANSWER:** **Denied.**

19. Plaintiff has made all necessary premium payments to Defendant.

**ANSWER:** **Denied.**

20. Plaintiff timely paid all of the necessary premium payments to keep the Policy from lapsing.

**ANSWER:** **Denied.**

21. Plaintiff has made all required premium payments to Defendant.

**ANSWER:** **Denied.**

22. Plaintiff timely paid all of the required premium payments to keep the Policy from lapsing.

**ANSWER:   Denied.**

23. The Policy was in full force and effect from its inception until the Insured's death on May 25, 2022.

**ANSWER:   Denied.**

24. A death claim was made on the Policy and to date it has not been paid.

**ANSWER:   Denied as stated.  Because the Policy lapsed for non-payment of premiums on or about May 15, 2021, no death benefit was owed and no valid claim for the death benefit could be submitted.**

25. Defendant breached the terms of the policy.

**ANSWER:   Denied.**

26. By reason of the foregoing, Plaintiff is entitled to the death benefits under the Policy.

**ANSWER:   Denied.**

WHEREFORE, Plaintiff respectfully requests judgment of this Court against Defendant, as follows:

a.  Plaintiff is entitled to the death benefit under the Policy;

b.  Awarding Plaintiff costs of suit and attorneys' fees; and

c.  Such other relief as the Court may deem proper and just.

**ANSWER:   Admitted in part, denied in part.  Admitted that Plaintiff requests such judgment from the Court.  Denied that Plaintiff is entitled to such judgment.**

## SECOND CAUSE OF ACTION

27. Plaintiff repeats and realleges each of the allegations contained in paragraph 1 through 26, above, as if fully set forth herein.

**ANSWER:    Lincoln Benefit incorporates its responses to Paragraphs 1 through 26 as if fully set forth herein.**

28. Upon information and belief, Defendant failed to send proper notices that the Policy was entering into grace in accordance with the Policy terms.

**ANSWER:    Denied.**

29. Upon information and belief, Defendant failed to send proper notices that the Policy was going to lapse in accordance with the Policy terms.

**ANSWER:    Denied.**

30. Upon information and belief, Defendant was not in compliance with the Policy terms.

**ANSWER:    Denied.**

31. Upon information and belief, Defendant failed to send proper notices that state the correct payment amount necessary to keep the Policy in force.

**ANSWER:    Denied.**

32. Upon information and belief, the amount of premium payments Defendant requested in its notices were significantly higher than the amount owed under the Policy, thereby making the notices ineffective.

**ANSWER:    Denied.**

33. Upon information and belief, Defendant's attempts to lapse the Policy were ineffective.

**ANSWER:    Denied.**

34. Plaintiff has offered to pay all premiums due on the Policy.

**ANSWER:** **Denied.**

35. By reason of the foregoing, Plaintiff is entitled to the death benefits under the Policy.

**ANSWER:** **Denied.**

**WHEREFORE,** Plaintiff respectfully requests judgment of this Court against Defendant, as follows:

a. Plaintiff is entitled to the death benefit under the Policy;

b. Awarding Plaintiff costs of suit and attorneys' fees; and

c. Such other relief as the Court may deem proper and just.

**ANSWER:** **Admitted in part, denied in part.  Admitted that Plaintiff requests such judgment from the Court.  Denied that Plaintiff is entitled to such judgment.**

### THIRD CAUSE OF ACTION

36. Plaintiff repeats and realleges each of the allegations contained in paragraph 1 through 35, above, as if fully set forth herein.

**ANSWER:** **Lincoln Benefit incorporates its responses to Paragraphs 1 through 35 as if fully set forth herein.**

37. In reliance upon the representations made by Defendant on February 9, 2021, Plaintiff acted to his detriment and was damaged by the termination of the Policy, attorneys' fees, and has incurred other fees and expenses.

**ANSWER:** **Denied.**

38. Defendant retained the premiums paid between the dates of February 2021 and May 2021 and has never returned those funds.

**ANSWER:** **Denied.**

39. As such, Defendant is estopped from claiming that the Policy entered into grace period when it did and ultimately terminating the policy.

**ANSWER:** **Denied.**

40. By reason of the foregoing, Plaintiff is entitled to the death benefits under the Policy.

**ANSWER:** **Denied.**

WHEREFORE, Plaintiff respectfully requests judgment of this Court against Defendant, as follows:

a. Plaintiff is entitled to the death benefit under the Policy;

b. Awarding Plaintiff costs of suit and attorneys' fees; and

c. Such other relief as the Court may deem proper and just.

**ANSWER:** **Admitted in part, denied in part.  Admitted that Plaintiff requests such judgment from the Court.  Denied that Plaintiff is entitled to such judgment.**

**WHEREFORE**, Defendant Lincoln Benefit denies that Plaintiff is entitled to any judgment whatsoever and requests that this Honorable Court grant Lincoln Benefit judgment of Plaintiff's Complaint in its entirety, with prejudice, and with costs assessed against the Plaintiff.

## LINCOLN BENEFIT'S AFFIRMATIVE DEFENSES

Lincoln Benefit has not yet commenced nor completed discovery. Without admitting any of the allegations in the Complaint, Lincoln Benefit alleges each of the following affirmative defenses.  Lincoln Benefit does not knowingly or voluntarily waive any applicable affirmative defense and expressly reserves its right to assert and rely upon such additional applicable affirmative defenses as may become available or apparent during the course of this action.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiffs failed to allege facts sufficient to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the Policy lapsed for non-payment of premium in accordance with its terms and the applicable law.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of waiver and/or estoppel.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because a remedy thereon would constitute unjust enrichment because Lincoln Benefit complied with the terms of the Policy.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because they failed to satisfy a legal condition precedent and/or to exhaust legal and/or administrative remedies.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff lacks standing to pursue the requested damages from Lincoln Benefit.

## LINCOLN BENEFIT'S COUNTERCLAIMS

1. As the Supreme Court of New Jersey recently observed:

> In New Jersey and elsewhere, no one can procure a life insurance policy on a stranger's life and receive the benefits of the policy. Betting on a human life in that way, with the hope that the person will die soon, not only raises moral concerns but also invites foul play. For those reasons, state law allows a policy to be procured only if the benefits are payable to someone with an "insurable interest" in the person whose life is insured.

*Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839, 841 (N.J. 2019).

11

      2.      In *Sun Life*, the Supreme Court concluded that stranger-originated life insurance (or "STOLI") policies run afoul of these principles and are therefore void *ab initio*:

> Generally, an investor funds a STOLI policy from the outset, which makes it possible to obtain a policy with a high face value. *See* Martin, *Betting on the Lives of Strangers*, 13 U. PA. J. BUS. L. at 188. The investor may lend the insured "the money to pay the premiums for" the period of incontestability, typically two years. Ibid. It is also common for an insured to buy the policy in the name of a trust and name a "spouse or other loved one as the trust beneficiary." *Ibid*. In such arrangements,
>
>> [i]f the insured dies within [the contestability] period, his spouse, as beneficiary of the insurance trust, will get the death benefit (the free insurance), pay back the loan plus interest from the proceeds, and often pay the broker up to fifty percent of the benefit received. If the insured lives beyond two years or the contestability period, then the life settlement company buys the beneficial interest in the insurance trust, paying the insured a lump sum percent of the face value of the policy .... The life settlement company or its investors will continue to pay the premiums on the policy, and when the insured dies, they will get the death benefit. Clearly, the sooner the insured dies, the greater the company's profit.
>
> [Ibid. (footnotes omitted).]
>
> STOLI arrangements thus present a significant legal problem: the investors have "no insurable interest in the life of the insured." As a result, the transactions pose questions in light of New Jersey's policy against wagering. *See Binday*, 804 F.3d at 565 ("A STOLI policy is one obtained by the insured for the purpose of resale to an investor with no insurable interest in the life of the insured -- essentially, it is a bet on a stranger's life."); *see also Grigsby*, 222 U.S. at 156, 32 S.Ct. 58 (noting that "cases in which a person having an interest lends himself to one without any as a cloak to what is in its inception a wager have no similarity to those where an honest contract is sold in good faith").

*Id.*, at 171-72.

3. Thus, in New Jersey and elsewhere, STOLI transactions violate constitutional and statutory bans on wagering, violate state insurable interest laws, take advantage of senior citizens, and otherwise distort the proper use of life insurance (which is generally intended to protect an insured's family or others from the financial consequences of the insured's death) by permitting stranger investors (who are more interested in seeing the insured dead than alive) to wager on human life.

## FIRST COUNTERCLAIM
## DECLARATORY JUDGMENT – ILLEGAL HUMAN LIFE WAGERING CONTRACT

4. Lincoln Benefit hereby incorporates by reference the preceding allegations as if set forth herein at length.

5. As the Supreme Court of New Jersey has held, "If a third party without an insurable interest procures or causes an insurance policy to be procured in a way that feigns compliance with the insurable interest requirement, the policy is a cover for a wager on the life of another and violates New Jersey's public policy." *Sun Life*, 208 A.3d at 849.

6. Upon information and belief, the Policy was, from the outset, procured by third parties and intended as a wager on the life of Mr. Stolper.

7. Accordingly, to the extent the Court concludes that the Policy has not lapsed, Lincoln Benefit seeks, and is entitled to, a declaratory judgment that the Policy was an illegal wagering contract that violated New Jersey law and public policy, thus rendering it void *ab initio*.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

8. Lincoln Benefit hereby incorporates by reference the preceding allegations as if set forth herein at length.

9. As the Supreme Court of New Jersey has held:

> STOLIs commonly involve life insurance policies procured and financed by investors -- strangers -- who have no insurable interest in the life of the insured yet, from the outset, are the ultimate intended beneficiaries of the policy. In other words, in a classic STOLI situation, a stranger who hopes the insured will die soon causes the policy to be procured and collects the death benefit. That type of arrangement runs afoul of New Jersey's insurable interest requirement and the statute's purpose. It also counters the principle underlying the requirement: the individual with an insurable interest "must have an interest in the continued life of the insured rather than in his early death."

*Sun Life*, 208 A.3d at 850.

10. Although a trust may have an insurable interest in the life of an insured, here the Trust was, upon information and belief, a cover for the wager on Mr. Stolper's life. Thus, it lacked any insurable interest in his life.

11. Additionally, the Policy was applied for and issued at the behest of individuals or entities—with no insurable interest in the life of the insured—who procured the Policy for the purpose of benefitting stranger investors in the life insurance secondary market.

12. Because no insurable interest existed at the time of issuance of the Policy, the Policy is void *ab initio*.

13. Accordingly, to the extent the Court concludes that the Policy has not lapsed, Lincoln Benefit seeks, and is entitled to, a declaratory judgment that the Policy lacked insurable interest because it was procured by and for the benefit of strangers without an insurable interest under New Jersey law.

**WHEREFORE**, Lincoln Benefit respectfully requests the entry of an Order by this Court as follows:

    A.    Declaring that the Policy is void *ab initio* due to it having been procured as a wagering contract on the life of Mr. Stolper;

    B.    Declaring that the Policy is void *ab initio* due to it having been procured without a valid insurable interest at inception;

C. Declaring that because the Policy is void *ab initio* it never existed;

D. Declaring that because the Policy is void *ab initio* the Court will leave the parties to this illegal contract as it finds them, thus permitting Lincoln Benefit to retain some or all of the premiums paid on the Policy;

E. Awarding Lincoln Benefit attorneys' fees and costs associated with bringing this lawsuit, as determined by the Court; and

F. Awarding Lincoln Benefit any further relief this Court deems appropriate.

Dated: August 18, 2022

Respectfully Submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**
*Attorneys for Defendant Lincoln Benefit Life Company*

By:   /s/ John Bloor

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of August, 2022, a true and correct copy of the foregoing will be sent to all counsel of record via the Court's ECF system.

                                                  /s/ John Bloor